Case number 18-4191 and 19-3496, Walid Abdulahad v. William P Barr, argument not to exceed 15 minutes per side. Mr. Abertin, you may proceed for the petitioner. Good morning. Thank you and good morning and may it please the court, Russell Abertin on behalf of the petitioner. Mr. Abdulahad is a Chaldean Christian from Iraq. He fled that country nearly 30 years ago and entered the United States nearly 25 years ago as a refugee. He's facing removal back to Iraq because of an in absentia foreign conviction entered against him after he was deported from Aruba. Furthermore, he was denied the right to apply for asylum and withholding of removal based on particularly serious crime analysis by the agency below. And finally, he has established his eligibility for protection under the Convention Against Torture based on the overwhelming evidence in the record, including U.S. State Department reports and multiple expert witness declarations. The foreign in absentia adjudication against Mr. Abdulahad does not qualify as a conviction under the Immigration and Nationality Act. The burden of proof in establishing the existence of that conviction is squarely on ice and the Department of Homeland Security for three reasons. One, because Mr. Abdulahad was a returning lawful permanent resident, the burden of proof is on the DHS to establish his inadmissibility. Second, the DHS also has the burden to establish the foreign law, which it did not do. And then third, when there's a mandatory ground for denial and ineligibility for relief, in this case asylum and statutory withholding of removal, the DHS has the initial burden to establish that there's some evidence that such a ground would apply. And here... Counsel, which of those issues are factual issues? The burden of proof is a legal issue and as a factual matter, the agency, the facts are essentially the record of conviction in the record from ARUBA. Whether that... Do we... Let me ask you, and the reason I'm asking about what are factual questions and what are legal are, of course, the question of jurisdiction. Whether we have jurisdiction to hear factual questions? The court does have jurisdiction to consider this issue because it does relate to a statutory ineligibility ground as well as his inadmissibility. The facts themselves are set forth in the conviction documents from ARUBA, but whether that satisfies the INA's definition of conviction is a legal question, the application of the law to those facts. The record itself is ambiguous, which is something that the agency itself didn't even reckon with. For example, at page 1568 of the administrative record, it seems to indicate that there was an acquittal entered against Mr. Abdul-Ahad. There's a significant body of law that indicates that a foreign in absentia conviction is not necessarily valid for in the board of immigration appeals decision in matter of ADAMO, that while the agency will normally respect a foreign judgment, it will look behind an in absentia foreign conviction to determine if those proceedings were fair and there were minimum due process safeguards. How were the proceedings here not fair and consistent with due process? There are several reasons why. Because the order against Mr. Abdul-Ahad was entered following his deportation, he had no opportunity to challenge the evidence. Did he have an opportunity to go back for the trial? I thought he just decided not to go back. I thought he had notice and he made a conscious decision not to He had no opportunity to go back when the conviction was entered on November 20th. At that point, he was in the middle of removal proceedings and was not able to return to Aruba. Prior to his departure, he did contest the allegations. Although he admitted that he had the substances taped to the bottom of his feet, he denied any knowledge of their unlawful nature. Well, he could have stayed in Aruba and contested the charges and gone to trial, couldn't he have? He may have been able to do that. But once he was deported, he no longer had the opportunity to return to contest the charges. And Aruba did not delay the criminal proceedings until a time when he could return. He didn't think strapping the 40 packages of cocaine to his feet was criminal. Is that his position? Unfortunately, the record was never developed to that extent. Is cocaine legal in Aruba? Mr. Abdulahad's position on his statements to the arresting authorities in Aruba was that he had no knowledge of what type of substance it was. He didn't know that he had cocaine taped to his feet? He didn't know that it was cocaine. He knew that something was taped to his feet. Did somebody else tape the cocaine to his feet? My understanding, based on the police reports, was that someone had convinced him to tape these substances to his feet to take to the United States. He thought they were some sort of prescription drugs. Unfortunately, the record was not developed below. Once the immigration judge determined that that offense was a particularly serious crime, the immigration judge did not take any testimony from Mr. Abdulahad or allow testimony as to what he knew or didn't know and whether his defense was meritorious or not in terms of his knowledge or lack of knowledge. You keep saying that your client was deported. Is that consistent with the record? My understanding was he entered into an agreement under which he could voluntarily leave if he chose, and he accepted that offer. The Aruban records at page 1536 of the administrative record indicate that it was classified under Aruban law as a deportation. Whether he accepted that doesn't change that as a deportation under the laws of that country. But he did accept it. Is that correct? He did, but he had no opportunity to go back and Aruba did not delay the proceedings. But as Judge Bush said, he could have stayed there, right, and contested it and left later. I assume that that option was available to him. Okay, so how does that deny him due process of law? He was denied due process of law when the Aruban court proceeded with the conviction with the criminal proceeding in his absence rather than put those proceedings on hold until he was able to return to that country. Where is there anything in the record that suggests the agreement was he would be allowed to go back to the United States and then come back and have a hearing in Aruba? I might have missed something, but I didn't think that was the import of the record here. I believe the record is silent as to whether he'd be able to return or not. And certainly in a normal proceeding, in a fair proceeding, the proceeding would stop until the defendant was able to return to the to be able to return to stand trial for the charges. Whenever a defendant is moved from one jurisdiction to another, the original proceedings don't continue on in that defendant's absence. Refresh my recollection, will you, was this a written agreement he entered into with the Aruban authorities? I believe it was an oral agreement. It's not, my reading of the record is not clear. What's at exhibit R2 is a translation of the Aruban documents. Elsewhere, there's the original Dutch, but they don't, they're not matched up page by page. So it's not exactly clear which document goes with which original document. The agency further erred in determining that Mr. Abdul had conviction in Aruba as a particularly serious offense that would bar him from asylum and withholding of removal. Even putting aside that and focusing solely on his application for protection under the Convention Against Torture, the record, including the documents submitted to the Board of Immigration Appeals in support of a motion to remand filed during his direct appeal, and then in support of a motion to reopen following the board's decision, affirming the significant risk of torture to a Chaldean Christian who's being deported from the United States following an allegation or a conviction for a significant criminal offense, including one that involves drug trafficking. The State Department reports, which this court found quite significant and persuasive in two published decisions earlier this year, in the Cotta decision, and then more recently in the Marquez decision, indicate that Chaldean Christians in this situation will be detained at entry into Iraq, especially where they lack valid Iraqi documents, that they'll be questioned, they'll be suspected of being either American foreign agents or significant security risks to that country. They'll be questioned, and in Iraq, questioning involves torture as a normal course of practice. And even if they're able to leave the detention at the airport, they have to navigate numerous checkpoints staffed not only by the regular Iraqi Army and security forces, but also militias, many of whom are aligned with Iran, but operate with impunity and the Iraqi government's support. And in a situation like that, someone like Mr. Abdullohad, who has no ties to Iraq, who's not been to Iraq in 30 years, who belongs to a persecuted religious minority, they would face a significant risk of being tortured. I believe the BIA determined that these were just a cumulative of prior reports that had been considered. Was that the ruling? That was their ruling, but that ruling was... Why are these not cumulative? As this court noted in Kata and Marquez, the 2017 and more recently the 2018 country condition reports represent new and significant change in the conditions in Iraq by focusing more clearly on the harms and the dangers facing Iraqi Christians, especially given their dwindling numbers in that country. And those dwindling numbers mean that they lack the political and military support to protect their own members. Following the court's decisions in those two cases, the immigration judges in Detroit, including the judge who originally denied Mr. Abdullohad's case, changed their position, changed their viewpoint on the dangers facing Iraqi Christians and have now been granting Kata claims on the same evidence that was presented in this case. And I see that my time is up. Any further questions at this time, Judge McKeague, Judge Bush? Okay. You'll have your three minutes rebuttal, counsel. All right. Let's hear from the respondent. Good morning. Greg Pennington on behalf of the Attorney General. I want to start at the beginning of the removal proceeding where he was charged as being inadmissible at the Detroit airport. He was charged for reason to believe he has or was involved in illicit trafficking of a controlled substance. And he has never challenged that finding of inadmissibility. So he's got the burden of proof backwards. It was originally the DHS's burden to show he was inadmissible to the United States. And the immigration judge sustained that charge when he failed to show up at his first hearing. But he has never challenged that in the motion to reopen or in any of the appeals to the board or in his opening brief to this court. So it was his burden to establish that he was eligible for relief or protection from removal. And on that, it was his burden to show he was not convicted of a particularly serious crime. Now, the Arubin conviction can be a conviction under the Immigration Act, either if it's a final judgment of guilt or if there is an admission of sufficient facts and some form of penalty imposed. Now, I would first argue that he hasn't actually challenged whether it is a conviction under AUSC 1101A48. Under those two theories I just outlined, he argues first that it was the wrong burden of proof, but the statute makes clear that it was his burden of proof. And he also argues that there were not sufficient procedural safeguards in the Arubin proceedings. And I think the courts already touched on that. There was plenty of safeguards. He was given his notice of rights, his right to an attorney, his right to appear and contest the charges. It was his choice. He wanted to get out of Aruba. He didn't want to stick around. So he reached some form of agreement with the Arubin public prosecutor and was able to leave. And that's where we get this in absentia judgment. The court should find that that is a judgment of guilt and that satisfies the first prong of the definition of conviction. So that alone bars him. But even if you find that it's not a judgment of guilt, if you look further into those Arubin records, there was an admission of sufficient facts of guilt. He admitted his guilt to the public prosecutor. And then the judge imposed some form of penalty. He was fined and he had to spend 15 days in jail. So under either route, under the definition of conviction, it's sufficient. But as he argues, if the record is inconclusive, then he still loses. As this court has held, an applicant for relief or protection from removal cannot meet their burden with an inconclusive record. So under any avenue, the court approaches it, it should find that this was a conviction for a particularly serious crime or he failed to meet his burden to show it was not. And as for the findings that it's a particularly serious crime, there's another two routes this can go. First, as Judge Bush kind of alluded to in the beginning, because inadmissibility was never challenged, the criminal alien bar is still in place. It doesn't apply to the facts underlying the deferral of removal under the Supreme Court's decision in Nisrala, but the criminal alien bar still applies to any other factual findings by the agency. And that's what the agency does when it goes on this case-by-case, particularly serious crime determination. It looks at the facts and circumstances of the conviction to determine whether it's particularly serious. And I don't think in any account the agency would abuse its discretion in finding that a conviction for taping over a pound of cocaine to your feet and trying to smuggle it into either Canada or the United States is not a particularly serious crime. So that leaves Mr. Abdulahad with just a deferral of removal under the Convention Against Torture. And as the agency held, and the immigration judge in a thorough hearing and thorough decision, this, because Mr. Abdulahad never, doesn't have any experience on the ground in Iraq, this was really just a battle of the experts. You had the Department of Homeland Security submitted Dr. Natale and Rubin and Olivan versus Mr. Abdulahad's experts. And this court has held in several decisions, published and unpublished, that the agency does not, under the substantial evidence review standard, the court doesn't get into this battle of the experts and reweighing of the experts. As long as there's credible evidence on both sides and the agency reaches a reasonable decision, this court, under substantial evidence, isn't going to disturb that ruling. So that brings me to his final two parts of these petitions is the motion to remand and the motion to reopen. The motion to remand he has never challenged. That was in the first of those 2017 reports that the board found were cumulative. And if you look at those reports from 2016 to 2017 to 2018, all of the reports, and there's no doubt there are incidences of violence in Iraq. But they don't show an individualized risk that Mr. Abdulahad himself will more likely than not be tortured. And it was the same in the motion to reopen. He wanted to submit additional country reports and new declarations. And the board held that those new declarations weren't in fact new because he didn't show that he couldn't have obtained them before. And to the extent they were new, again, they were just cumulative. His experts say he will more likely than not be tortured. The government experts say it's not more likely than not that will happen, at least by the government or with acquiescence by a government official. Well, Counselor, Mr. O'Britton says that these reports led to, and I believe we've been given, decisions of other immigration judges granting relief for Chaldean Christians. How do you distinguish those cases from this one? I mean, doesn't this show that the agency maybe here isn't acting consistently with respect to Chaldean Christians? Yes, Judge Bush, it's dependent on the records in each case. I mean, these are highly factual, thick records, and we just don't know what was made in arguments of support. We don't know what arguments were made by the government or the petitioner's attorney in those cases. And if you look at these decisions, one of them was a remand from the board to consider experts, but it was no reason why those experts were excluded in the first instance. So the board simply remanded to the immigration judge to consider them. In one of the other cases, the board remanded because the immigration judge excluded a witness because there was no CV or resume attached to the declaration, but the board found that there actually was, so the immigration judge erred, and the board remanded so the judge could consider that declaration. And in the final case he submitted, it was an ineffective assistance to counsel claim where we didn't have the voluminous record in that case that we have here, and the board remanded so the immigration judge could take a look at all the evidence like we have here in Mr. Abdulahad's case. And so, and again, these are unpublished board decisions, so the board's not bound by them. And this court recently has looked at these kind of inconsistent decisions, if you can call them that, and found that, you know, one inconsistent decision doesn't show that the agency is acting arbitrarily in denying one applicant's claim and granting a different one, because the records are so fact-specific. And I think in one of these cases, you know, the court recognized that the board members and the immigration judges are not automatons. They can reach disagreement over the factual record before them. So these cases in and of themselves, we don't know that the agency's granting the majority of these Chauvey and Christen cases and denying Mr. Abdulahad. All right, Mr. Pennington, regarding the factual basis of the case, can you talk briefly about our jurisdiction to consider the dispute of facts in this matter? Right. So the way the Supreme Court kind of carved out the review of deferral and removal claims under the Convention Against Torture is that it's kind of a separate order. So anything that's still within the final order of removal that doesn't pertain to deferral of removal is still subject to that bar. Well, that's not the holding of the Supreme Court case, is it? No, the court declined to reach that issue. You know, in a footnote it says, we are not deciding whether the criminal bar still applies to withholding of removal. But by explicitly excluding that from its decision, this court is still bound by its prior decisions holding that the criminal alien bar applies to factual findings in a withholding of removal claim or an asylum claim. Or here we would argue that the particularly serious crime, the finding that the particularly serious crime, anything that doesn't specifically pertain to that application for deferral of removal, we would argue is still subject to that bar. Okay. What would be the more prudent thing for our panel to do on the issue of our jurisdiction to review the factual findings? Would it be more prudent for us to hold that, yes, it appears that a prior precedent is still in place. However, in the abundance of caution, we'll nevertheless review the factual findings and make a decision on that as well? Or should we just end it on there's no jurisdiction to review factual findings? What would be the better course for us to do? Because it's subject matter jurisdiction, I think the court should address it, but it would also be prudent to just as a matter of, you know, judicial economy to actually look at the facts, even if the court wants to. So a jurisdictional holding that the court still barred from reviewing withholding of removal. And as I mentioned in the supplemental brief, withholding of removal wasn't even on the table here, really, because of the particularly serious crime. So the only thing the court really needs to look at is that particularly serious crime. And if it upholds that particularly serious crime determination, then all we have left in these petitions is deferral of removal, and we don't have to get into that jurisdictional mess of whether it still applies and where the line is drawn. So I see my time is starting to pick toward the end. If the court doesn't have any further question, we would ask the court to deny these petitions for review. Very well. Any further questions? Judge McKeague? Judge Bush? No. All right. All right. Council, you've got three minutes rebuttal. Thank you. Mr. Abdul-Ahad has throughout the entire removal process challenged his inadmissibility and the conviction. Both matters. And that's found at pages 651, 2385, and 2387 of the administrative record. From the very beginning, he denied that he was inadmissible as charged. This case is much more than a battle of experts. Following the immigration judge's decision, the U.S. State Department released new reports, which were presented to the board as part of a motion to remand as a motion to reopen, which significantly undermined the conclusions of the government's, the DHS's experts, or at least show that their rosier predictions didn't hold true, that the situation in Iraq significantly worsened after those experts prepared their report. In Cotta and in Marquez, the court found those new reports from 2017 and 2018, which were not available to the immigration judge, to be significant and to allow Mr. Cotta to meet his burden of showing that, but for a reasonable probability of that, but for the ineffective assistance of counsel, he would have been allowed to remain in the United States. The court would not have reached that conclusion had the state of the record at that time, the 2017 and 2018 reports, not been sufficient to at least create a reasonable probability that he would meet his burden of establishing his eligibility for protection under the CAT. In Marquez, which was a similar situation to this, the court upheld the original finding that Marquez did not meet his burden of based on the record that was before the immigration judge, but the court then remanded based on new evidence that was submitted to the BIA, including the 2017 State Department reports, because they represented a significant worsening, significant departure from the conditions in Iraq prior to that. To address the question of statutory withholding of removal, although the Supreme Court especially put that question aside, the government argued in that case to the Supreme Court that granting jurisdiction to review factual determinations in CAT cases would also open the door to jurisdiction over factual questions in withholding of removal cases. And Justice Thomas' dissent also focused on that broadening of jurisdiction. And then finally, the particularly serious crime argument that we advanced in our brief is a legal one and not a factual one, which is that the agency is misapplying the particularly serious crime statutes in the asylum and withholding of removal provisions. Right. Thank you. Any further questions? Judge McKeague? Judge Bush? Thank you, counsel, for your arguments. The case will be submitted.